3230760 Stratford Realty, LLC and Stratford Stratford Nassim, LLC Appellants versus Village of Bloomingdale Appellee.  Schwartz, if you're ready to begin. Ma'am, may it please the court. My name is Marty Schwartz. I represent the plaintiff appellant in this case. There are three agreements that are at issue in this case. One is a 2007 redevelopment agreement between the developer and the defendant village. There's a 2011 assignment and assumption agreement between the original developer and the defendant village. And there's a 2019 deed in lieu agreement between the developers S&E and the plaintiff. And this lawsuit was filed because the defendant refused to consent to the assignment of the redevelopment agreement to the plaintiff. And therefore, the defendant refused to pay monies that the defendant collected pursuant to the redevelopment agreement to the plaintiff. The trial court dismissed the case based on defendant section 2-619 motion for lack of standing to pursue the lawsuit. And essentially, the trial court ruled that because the defendant refused to consent to the assignment of the redevelopment agreement to the plaintiff, that the plaintiff did not have standing to contest the defendant's refusal to consent to the assignment. In so doing, the trial court ruled that the operative agreement was a 2011 assignment and assumption agreement between the original developer and the village. The trial court found that the 2011 assignment and assumption agreement required the consent of the village, and the village was not a party to that assignment and assumption agreement. That ruling in itself is perplexing because clearly the village was a party to that assignment and assumption agreement. And further, the assignment and assumption agreement did not address one way or the other anything about future assignments. Moreover, the plaintiff is not suing under that 2010 assignment and assumption agreement. It's suing under the redevelopment agreement from 2007. We don't have to spend too much time trying to decipher the trial court's ruling because the standard on review is de novo. So I would just say that I just want to put the trial court's basis in there. So there's two really precise issues that I see, Your Honor, in this appeal. One is whether the defendant's refusal to consent to the assignment of the redevelopment agreement deprives the plaintiff of legal standing to contest that refusal. Second, whether the assignment of the redevelopment agreement to the plaintiff without defendant's consent effectuates a forfeiture of the contract so that the defendant can still receive the benefits, which is the special tax on retail sales, but does not have to remit it to the assignee of the party that paid for those improvements. So as we set forth in our brief, for there to be legal standing, a party merely has to say they have some type of right, suffer an injury, and that it will receive some benefit for many relief granted. The validity or the effectiveness of this assignment goes to the merits of the case and not the legal standing for the plaintiff to pursue this action. And clearly, the plaintiff is the owner of the property. It was assigned to it subject to the village's consent, and the relief it seeks is to compel the defendant to consent to the assignment and to pay the money so that it's collected. So I believe that there's legal standing for the plaintiff to pursue the lawsuit. I think what the defendant was really arguing is that the effectiveness or the enforceability of the assignment that the plaintiff failed to sustain that. However, I would suggest that that goes to the merits of the case and not to the technical legal standing. But I understand this court could rule, could affirm on any basis it wants, or within the record, I should say more clearly. So I do want to address sort of the enforceability of the agreement, even though I don't think that goes to the standing, but it goes to the merits. So again, in this case, the original developer made improvements to the shopping mall, the Stratford Mall. In return, the village imposed a special tax, collected the tax, and was to remit a portion of those taxes to the developer. The plaintiff is the assignee of the assignee of the developer. So the courts have found, and the village continues or continued during the pendency of the lawsuit to collect the tax and just keep it. And the courts have found that a party that receives the benefit of the contract that's been assigned, even though they haven't consented to the assignment, waived the right to contest the assignment. Now, that's in a landlord lease position, a landlord-tenant position by the case of Waukegan Times versus Conrad, where the lease was assigned and the plaintiff contended, even though it continued to receive the rent, that the lease was forfeited because of the assignment. And the court ruled no. The landlord, by continuing to receive the benefits, waived the objection to the assignment. But even if we don't get to the waiver issue, the courts have refused to find a forfeiture of a contract merely because it was assigned without the consent, without its consent, where, again, the party refusing to consent receives the benefits. And one case I'd cite is Hansel versus Basie, a second district case, where the purchaser assigned a, paid all the money to the seller, but before the deed was transferred, assigned the contract to a third party in violation of the contract. It did not have the seller's consent. And the court said that to find forfeiture would be trifling with justice, where the seller already received the funds. I would say the same thing applies here. Can I ask a quick question, counsel? So, if I understand this correctly, the village already collected the funds, and they already reimbursed the original developer, you know, 4 million, part of what was underneath the max. And are you saying that the predecessors had done more, that they were already owed? And this is, in essence, a debt collection is all. They've just been assigned a debt that was already owed. It's done. The money's owed. And so, you're not demanding that you be able to continue development at this point and be paid for that. You're saying this is already water under the bridge. Absolutely. We did all the improvements. And before the village had to pay a penny, they had to approve the improvements. They approved them and then started paying us, and they pay us a percentage of the taxes, the special taxes, over 23 years, not to exceed 20 million. Excuse me, when you say we, you mean as an assignee? Yes, yes, we're the assignee. It's a bit confusing when you say, when you look at it as a second party, it looks like everything was done. The money was paid. It's over. In fact, that's the argument I just heard from you. I can't remember your quote from that case right now, but that's exactly what you argued. What you're saying is there's a continuing stream of money that your client is owed because they stepped into the shoes of the original, correct? Yes, and the quote was trifling with justice. Thank you, thank you. I did have to look up trifling, I must say. But also, so in that Ansel case, it was the same thing. The purchaser paid all the money, assigned the contract without the permission of the seller. Similarly, in the Loyola versus Medcare case, this is where the patient assigned his HMO benefits to the hospital. And what's important about that case is the hospital sued. Even though the contract between the patient and the HMO said it's not assignable, the patient assigned it to Loyola, and it was Loyola that brought the suit. Under the trial court's ruling, Loyola would not have standing to bring the suit because the HMO, the defendant, did not approve of the assignment. Now, the court instead in Loyola, the court went to the merits of the case, went to the merits of the assignment, and said, since this is merely an assignment of monies that are already due, the provision that prohibited assignments is inapplicable. And again, that's exactly what is here. The S&E, in this case, the plaintiff, is just seeking to receive the monies. With respect to the defendant's arguments, the defendant spends a lot of time trying to defend the trial court's ruling and how this 2010 agreement doesn't provide for further assignments and that the 2010 agreement is operative. I don't think any of that makes sense. The 2010 agreement did not replace the 2007 agreement. The 2011 agreement, you mean? The 2011, I'm sorry. The 2011 agreement did not replace the 2007 agreement. All it did was change the parties to that agreement. And there's absolutely nothing to indicate when the redevelopment agreement was assigned in 2011 that the assignment provision in the redevelopment agreement was excluded. There's nothing, again, in that assignment and assumption agreement to say everything in the 2007 agreement is being assigned except the right to reassign it. The fact that all these agreements talk about the S&Es indicates that there would be future assignments. Same thing, the 2011 integration clause, that's limited to the subject matter of the 2011 agreement, which is the assignment of the redevelopment agreement, not the redevelopment agreement. Your Honors, unless you have any further questions, I'd merely state that the trial court erred in claiming that the plaintiff didn't even have legal standing to raise these arguments and address the case on the merits, and therefore it should be, the trial court's ruling should be reversed and remanded back with directions to deny the motion to dismiss. Thank you. Thank you, Mr. Schwartz. Justice Peterson, any other questions? No? Justice Bertano? No, thank you. I think your gentleman covered it. All right. We can move on then to the appellee. Ms. Thomas, are you ready? Yes, I am. Thank you. Thank you. Thank you. May it please the court and counsel, the real issue here is, yes, of course, we do have these three different agreements, but plaintiff appellant tries to gloss over the initial agreement here. The 2007 agreement between the village and FMP Stratford was very specific, and it was designed to be very specific concerning the assignments and concerning who the village wanted to benefit from this redevelopment agreement. The agreement said that if there is an assignment... I'm sorry, Ms. Thompson. No worries. The 2007 agreement, as you're starting to say right now, what about the 2011? It doesn't prohibit assignment, does it? I would argue that it does prohibit assignment because it does not specifically allow assignment. If the original agreement, the 2007 agreement, which was very specific about assignment, clearly the parties knew how to include that in there, and if they had wanted to include additional assignment, they would have included it in the 2011 agreement, and they did not. Legal maxim, though, that assignment is generally prohibited, is there? No, I don't believe there's a legal maxim, but I believe that the court would be remiss not to look at what the party's agreement was initially, and that was, as I said, very specific about who and what parties any assignment could occur in the future, and by not including that, I believe it was very clear that the village was not interested in assigning to any further parties. If I may just ask a question about the 2007. I know that it says they have to be able, willing, financially, good character, things like that, but right now, I mean, we're at the pleading stage, and we're taking as true the pleading that the original redeveloper has completed all improvements and started getting paid, and that the village, I don't know whether it's a village or city, but Bloomingdale approved them. That's where we're at from a factual basis because we're at pleadings, correct? Right. Why does it matter if the original redeveloper has completed everything, and there's nothing for the second, I'll call it, a putative assignee to do except collect money? Why does it matter the character of the putative assignee, the plaintiff in this case? Well, I would assert, and plaintiff's claim or complaint, amended complaint at this point, is very vague. It does not indicate that all of the work had been done. What it indicates is that FMP Stratford did some work and collected some money, and that's it. So it does not indicate that plaintiff itself did any work to the property, does not indicate that Five Mile, who was the original assignee, did any work and is owed any money. There are no allegations to that effect. My recollection is it alleged that the original redeveloper had completed all improvements, and as a result, Bloomingdale approved them, and $4 million has been paid up until the time of assignment to the putative assignee. Right, and that was the amount that was owed, was the $4 million. So there is no additional monies owed because there were no, beyond FMP Stratford, there was no additional work that was done or completed. So I believe Five Mile purchased and was assigned the rights to continue to do work, continue to do those improvements, and continue to benefit from the special tax, but in fact, they did not complete anything. So there is nothing left for the appellant to be paid. This tax was not designed just to be an open stream of money to anybody who happened to own this property. This tax was designed to try and improve the property, try and make it a benefit to the village because the property is improved, and additionally to the landowner because, again, the property is improved. But plaintiff and appellant, or plaintiff-appellant has done nothing to improve, and quite frankly, there is no allegations that Five Mile did anything to improve, and therefore is not owed any of that money. Thank you. Yes. So, ultimately, what we have here is we have these two initial agreements. The first one is very clearly between FMP Stratford and the village. No question in the world about that, and again, very specific assignment requirements. The second agreement, the village consented to assignment to Five Mile. Again, no questions about that. Everybody's in agreement about that. But that is where things go awry here. The deed in lieu of foreclosure that was executed between the plaintiff-appellant and Five Mile did not involve the village. The village was not consulted. It was not included. And in fact, paragraph 2.4 of the deed in lieu of foreclosure agreement is very specific that it may or may not, the assignment of this 2007 agreement and 2011 agreement may or may not be able to be assigned. The language states, at closing, borrower, to the extent that such intangible personal property is assignable. In other words, it's leaving open the possibility that it is not assignable, which is what we're arguing here. It refers specifically to this 2007 agreement as subsequently assigned to borrower on October 24th, 2011. It does not say anything about additional assignment. And then it says, lender acknowledges that the assignment of the STIF requires the consent of the village of Bloomingdale, which as of the date hereof, had yet to be given to the parties. Clearly, the village was not consulted. Clearly, the village was not included in that agreement. And now what the plaintiff appellant is seeking to do is to bind the village to an agreement to which it was not party. Now, there's been no allegations that by the plaintiff appellant, even if assuming arguendo that there was an assignment, there's not even been allegations that they would have met the village's criteria to be a party that could have had the rights assigned to it. There's no allegations to that effect. And so what the plaintiff appellant is trying to do is saying, well, pay us this money that was collected, even though we and our predecessor have not done any work to collect that money. And by the way, find that there's an assignment of these rights to us, even though we haven't shown in any way, shape, or form that we have the right, as the agreement says, similar qualifications, financial ability, and character necessary to fulfill the obligations. Isn't that a 6-15 argument, though, Ms. Thomas? You're telling us that they didn't allege the necessary facts in their complaint, but the judge is saying they don't have standing to even bring their complaint. Well, that's right. And I think there's a variety of reasons that the trial court was correct in dismissing the complaint. I think standing is primarily the main argument here. I don't believe that the plaintiff appellant has any claim to bind the village in this matter. And I believe standing was the appropriate basis in which to make that determination. But even beyond that, there's other significant failures in the amended complaint. But Judge Wheaton ruled on a 6-19, not on a 6-15. That's right. That's right. Thank you.  So, much of the plaintiff appellant's argument here stems from, you know, we can collect a debt, we can step into the shoes of the creditor, and that's really just not the case that is before the court. This is not a simple debt collection matter. This is not just an improvement, but an improvement as approved by the village, an improvement according to all of the agreements. There's many precursors that need to happen before we even get to any sort of debt collection. And quite frankly, none of those happened. There is, there's no debt to collect. There is no debt that was incurred. There's no assignment. And quite frankly, there is no standing here for the plaintiff appellant to bind the village in any way. Does anyone have any additional questions? I do not. Justice Peterson? I do not. Justice Bertani? No, thank you. Justice Thomas, thank you very much. Thank you. Mr. Schwartz, we'll have five minutes in rebuttal. Thank you. I want to point out paragraph nine of our amended complaint states that the developer completed the improvements prior to October 2011 and received in excess of $4 million. Is that all they were supposed to get, Mr. Schwartz? No, they were supposed to get under section 4.5 of the redevelopment agreement, they were supposed to get up to $20 million over 23 years. For additional improvements? No, for those improvements, phase one. I see one head shaking one way and one another. I'll leave this one alone because it's substantive in my mind. Well, it's right in section 4 of the redevelopment agreement. The additional improvements would be for phase two and the agreement specifically says in section 4 that if there's additional improvements, you go to the village for more money and you'd have to work out a new agreement for them. But your client didn't make those improvements because they never got that agreement and that's why you filed your lawsuit, right? That is correct, but no one was obligated to make phase two. It was totally optional and optional on behalf of the developer. So you're not really owed any money right now? If you advanced forward, completed phase two, they agreed, then you'd be owed money. That is correct. We're not owed money under phase two. We're claiming we're the S&E of the developer who's owed the money under phase one and there's nothing in the agreement to say if the developer assigns the contract, his rights to collect are terminated. But Mr. Swartz, so if you step into the shoes and the village was to say, great, glad to have you, we want to do more improvements also, go ahead, we'll pay you according to the previous contract. That's what you're asking for the opportunity to do, correct? No, we're not asking for the right to make additional improvements and collect additional funds. We're saying we're entitled to the funds that belong to the original developer, that that was assigned to us and we collect those funds over the next 23 years for a maximum of $20  They paid for, if we get to the $20 million, which I doubt, So maybe I can clarify where I think we're all kind of asking questions around. So what your position is, if you're allowed to pursue the litigation, there is additional monies based on phase one over the $4 million that have yet, that you at least, and again, Judge, I don't recall that one of you shake your head yes, the other one shakes your head no, that's for the litigation. But you're saying that you at least have an argument that there's still more money to be paid that is owed, everything's done, that is still owed from the village on phase one above and beyond the $4 million. Absolutely, and we submitted that and it was $20 million of eligible expenses that the city approved already. The city approved it when it first started making payments, there's no obligation to any additional work to get the balance of the monies over the 23 years. It's reimbursing the improvements a developer made, as set forth in the redevelopment agreement, was $80 million. And the village determined $20 million was reimbursable and will pay it over 23 years a maximum of $20 million. So your position is your client really just bought an annuity? It was that it's correct, it's worse than that because we were the lender, and we did a deed in lieu agreement. But I believe it's absolutely this is just a debt collection, we're only trying to seek the money that the original developers owed, and it's been assigned to us, and the fact that there's some council said we didn't allege that we qualified for the assignment in paragraph 21, we allege there was no valid reason for the defendant to deprive the plaintiff from receiving the benefits of the redevelopment agreement. And so I believe that's sufficient, certainly they didn't contest that allegation before the trial court. So I believe under the plain reading of the redevelopment agreement, this is a debt collection, it's been assigned to my client, the defendant has refused to consent to the assignment. They continue to collect the money, though. I see your time is up. Thank you. Thank you. Gentlemen, any other questions? No. Well, thank you for starting the year off right here, Council. You're going to be escorted out of our virtual courtroom, and we will issue a written ruling in due course.